## ENOCH CROSS, plaintiff in error, *v.* THOMAS BRYANT and JOHN E. SMITH, defendants in error.

### *Error to Peoria.*

It is not error to exclude parol evidence of a contract of sale which is contained in a deed of assignment, when the written evidence could be produced.

The Supreme Court will not infer that a deed was excluded from the jury in the Court below, upon the technical ground of want of proof of its due execution, unless that reason is expressly stated in the bill of exceptions.

A debtor may prefer one creditor, pay him fully, and thus exhaust his whole prop-

erty, leaving nothing for others equally meritorious. He may also partially pay a portion of his creditors, in unequal payments, and wholly neglect his other creditors; yet the law will not disturb such disposition of his property.

A deed of assignment made by a debtor to a trustee for the benefit of a portion of his creditors, (which were divided into two classes,) provided they became parties to the deed within sixty days, stipulated that the first class should be paid in full, and the second ratably, if there should not be sufficient to pay the whole, and that the surplus, if any, should be paid over to the assignor. A memorandum was annexed to the deed, stating that three creditors were not provided for in the assignment, for the reason that they held securities by mortgage: *Held,* that the conditions of the deed were not fraudulent. *Held,* also, that the employing of the assignee, as the agent of the trustee, to take charge of the property, did not render the transaction fraudulent, although the agreement to employ him as such agent was made on the same day that the assignment was executed.

*Semble,* That the possession of the property assigned, by the assignor, as the agent of the assignee, where a general assignment is made by a debtor for the benefit of his creditors, is not fraudulent *per se.*

THIS was an action of *trespass de bonis asportatis.* The declaration alleges that the defendants, on the 9th of April, 1838, took and carried away 80,000 feet of the plaintiff's lumber, of the value of $ 2000.

The defendants pleaded in justification of the taking, that said Bryant, at the time of the taking, was sheriff of Peoria county, and said Smith was his deputy; that Henry McCracken and John Struthers, before the said taking, sued out a writ of attachment from the Circuit Court of Peoria county, against William Pierce, Simeon B. Johnson, and William H. Perry, for $ 624,75, which writ was delivered to said Smith, who levied it on the property mentioned in the declaration, and that said property was the property of said Pierce and Johnson.

To which plea the plaintiff replied property in himself, and tendered an issue to the country, which was joined.

A trial was had at the July term of the Peoria Circuit Court, 1839, before the Hon. Thomas Ford, and a verdict rendered for the defendants.

It appears from the bill of exceptions, that "the defendants, to maintain the issue on their part, introduced evidence to prove that the property mentioned in the plaintiff's declaration, was in the possession of William Pierce and Simeon Johnson, partners in trade under the firm of Johnson & Pierce, a short time before it was taken by the defendants, and that the said Johnson & Pierce were then the owners thereof. To show property in himself, the plaintiff called the said Pierce as a witness, who testified that on the 7th of April, 1838, said property was sold to the plaintiff, and that on the morning of the 9th of April, he went with the plaintiff to the place where the property then was, and delivered it to him, together with the other property which was sold at the same time, except some hogs which could not be delivered, as they were then running at large in the woods; and the plaintiff then immediately constituted said Pierce his agent to attend to his property as hereafter mentioned, said agency having been agreed upon on the sev-

enth of April aforesaid.    Said Pierce further testified, that the said property was sold to the plaintiff in trust for the creditors of the said Johnson & Pierce.    Said witness also testified that said lumber was made at the saw mill of said Johnson & Pierce, about two miles distant from the place where it then was, it then being at a public landing place in the town of Detroit, in the county of Peoria, and a large part of it formed into a raft in the Illinois river ; that the said witness having been appointed agent for the plaintiff as aforesaid, as such agent took charge of said lumber and went on to complete the raft, for the purpose of taking it down said river for the plaintiff, to Peoria, and he proceeded so to do ; but on the same day, before the lumber was removed by the witness, it was taken by the defendants.    In answer to a question by defendants' counsel, the witness stated that said sale was by a deed of assignment from Johnson & Pierce to the plaintiff, of the said property, made on the seventh day of said April ; whereupon the judge, on motion of the defendant, excluded so much of the evidence of the witness, as related to the sale of said property.

The plaintiff offered to introduce a deed of assignment of the property from Johnson & Pierce to the plaintiff, in trust for their creditors, which was objected to, and the deed rejected.

The deed was an indenture of three parts.    Johnson & Pierce of the first part, said Cross of the second part, and William Miller and others, creditors of said Johnson & Pierce, who should execute the indenture within sixty days, of the third part, and was dated April 7th, 1838.

This deed conveyed the property in question, upon trust that Cross should immediately take possession of it, and at public or private sale, sell it, and appropriate the proceeds as follows, viz :

1.  To pay costs of the assignment and expenses of the execution of the trusts.

2.  To pay certain creditors named the full amount of their debts, if they should execute the deed within sixty days.

3.  To pay to other creditors who should execute the deed within sixty days, their respective debts, or a ratable proportion thereof, if proceeds should be insufficient to pay the whole.

4.  If any thing remain, to pay it over to Johnson & Pierce.

The deed contained a grant of full powers to Cross, and covenant, by Cross, to execute the trusts in the deed.    The deed refers to schedule marked B, and made part of the deed, as " a schedule of the several creditors of the said Johnson & Pierce, with the amounts respectively due them, as nearly as can now be recollected and ascertained by said Johnson & Pierce."

The deed is signed and sealed by Johnson & Pierce, by Cross, and by many of the creditors of said Johnson & Pierce.

Among the creditors named in the schedule is said Cross, and his debt is put down at $58,81.

The following memorandum is attached to the deed

" In the foregoing schedule of debts are not included three notes due to McCracken & Struthers, amounting to about three thousand dollars ; also a note of five hundred dollars to William H. Perry ; also a note of about five hundred dollars to Josephus Loring ; all of said notes being secured by mortgages on the real estate and mills and fixtures of the assignors."

The plaintiff excepted to the decisions of the Court, and brought the cause to this Court by writ of error.

The errors assigned are, —

1. That the judge excluded so much of evidence as related to the sale for property mentioned in the plaintiff declaration.

2. In refusing to admit the deed of assignment offered in evidence by the plaintiff.

Onslow Peters, for the plaintiff in error :

I. Was the deed of assignment which the plaintiff offered in evidence, admissible for the purpose of proving property in the plaintiff ?

As it purported to convey the property in controversy, it was proper evidence unless it was fraudulent upon its face ; *i. e.* unless it was in such form, or contained such provisions as to render it fraudulent in law.

1. A debtor has a right to prefer his creditors by appropriating his property for the full payment of one, or one class, to the total exclusion of another, by paying or conveying to that one, or class, any particular portion of his property. Holbird *v.* Anderson *et al.*, 5 Term R. 238 ; Meaux *et al. v.* Howell *et al.*, 4 East, 1 ; or,

2. A debtor may lawfully convey his property in trust to another for the benefit of any one creditor or class of creditors, and may direct by his conveyance how and to whom the proceeds shall be appropriated and paid. Grover *v.* Wakeman, 11 Wend. 194, and authorities there cited ; Estwich *v.* Coillard, 5 T. R. 423 – 5.

Whatever doubts may formerly have existed as to this right of preference by a debtor, the doctrine is now too well settled to be shaken. Kent's Com.

3. A general assignment of a debtor's property in trust for all his creditors, is valid when it is coupled by no unjust conditions for the purpose of coercing the creditor.

In Massachusetts it is now perhaps the settled doctrine, that such a general assignment is not valid ; but this is peculiar to that and the other New England States, and is part of their local common law. Widgery *v.* Haskell, 5 Mass. 144 ; Harris *v.* Sumner, 2 Pick. 129.

Such is not the doctrine of the common law of England or of the United States generally. Pichstoch *v.* Lyston, 3 Maule & Selw. 371 ; 5 Term R. 238 ; 5 T. R. 420, cited above ;

Marbury *v.* Brooks, 7 Wheat. 556 ; Halsey *v.* Fairbanks, reported in Appendix to Oliver's Conveyancing, 560, 566 ; and same case reported in 4 Mason.

4. It is as well settled also that a debtor may convey his property in trust for the benefit of a particular creditor or class of creditors, who shall give their assent thereto, by becoming parties to the deed of assignment.

No authority to the contrary is recollected.    Meaux *v.* Howell, 4 East, 1, above cited ; Widgery *v.* Haskell, cited above ; Halsey *v.* Fairbanks, as above cited ; Hastings *v.* Baldwin, 19 Mass. 552.

5. And he may convey in trust part of his property to pay one or a part of his creditors.

Lord Abingdon conveyed property in trust for his creditors, except one Townsend, who was not named in the schedule ; and it was held no fraud, as it did not appear he was excluded for the purpose of defrauding him by securing the property.    Estwich *v.* Coillard, 5 T. R. 420 ; *per* Buller, Jr., — cited and approved by Story J., in Halsey *v.* Fairbanks, above.

II. Do any of the provisions of this deed of assignment invade or interfere with these well settled principles ?

1. It does not appear on the face of the deed whether all the property of the assignors was or was not conveyed to the plaintiff in trust ; *non constat,* but they reserved enough to pay all other creditors not named in the schedule.

2. It does not appear on the face of the deed that there were any other creditors of Johnson & Pierce.    If there were, it is a question arising extrinsic of the deed, and is no reason for excluding the deed itself as evidence.

3. If the memorandum is to be deemed part of the deed, it rebuts any presumption of fraud, because it shows that the persons therein named, were already otherwise secured.

4. The persons named in the memorandum might have became parties to the deed, and received the benefit of its provisions, as the second class of creditors of Johnson & Pierce.    Grover *v.* Wakeman, 11 Wend. 192 − 4.    In the case here cited, a class of creditors designated as No. 2, were provided for, if they would receive their dividend and discharge the assignor in full.

The assignees were next to pay all the other just debts of the assignor.    It was held, *per* Sutherland J., that though class No. 2 refused to come in as class No. 2, yet they could come in to share in the benefits of the provision for class No. 3.

In the case at bar all the creditors who should execute the deed in sixty days might come in.    No one was excluded.    The latter clause, referring to the schedule of creditors and debts, marked B, excludes no one, and is added only to show to some extent the situation of the assignors, as to their debts and their creditors.

5. The deed debarred or delayed no one from pursuing his legal remedies.

6. The time allowed for the creditors to become parties, was neither so long nor so short as to raise any presumption of fraud. It was a reasonable as well as a usual time.

7. It was not a mere naked trust in the plaintiff; being himself a creditor, he had a right to take the property in security for himself and others. And if the other creditors chose not to become parties, they should have garnisheed the assignee, so as to have charged the surplus, and not have attached the property. Hastings v. Baldwin, 17 Mass. 557.

8. The clause authorizing the assignee to pay the surplus to the assignors, is not fraudulent, but rebuts the presumption of fraud. It shows an honest intent. It directs the assignee to do only what the law would have required him to do if the clause had been omitted.

The law would have raised a resulting trust in favor of the assignor, so as to charge any surplus remaining in his hands, after having executed his trust. Because the parties agree to do what the law would require or compel them to do, it would be strange if this would condemn them for fraud. Halsey v. Fairbanks, Oliver's Con. and 4 Mason R. before cited, and the authorities there referred to by Story, J.

9. No judicial decisions have been found to sustain the objections to this deed.

The following may be noticed as at first view having such a tendency.

The deed of assignment in this case directed the application of the proceeds of the assigned property, and part of it to pay certain creditors, " Provided, that none of said creditors shall be entitled to the benefit of this assignment, excepting such as shall, within ninety days, signify their assent to it, *and release the parties of the first part*, (the assignors,) by signing and sealing these presents ; " *Held*, that this compulsory clause rendered the assignment void as to other creditors. Atkinson v. Jordan et al., 5 Ohio 293.

The assignment in this case made a provision for a class of creditors called No. 2, provided they " should discharge in full their respective claims and demands against the assignors." For this compulsory clause the Court declared it fraudulent. Grover v. Wakeman, 11 Wend. 187.

This assignment contained a similar coercive clause ; and the Chancellor set it aside so far as the trusts had not been executed by an appropriation of the proceeds under the assignment. Ames v. Blunt, 5 Paige 13.

These decisions, and those referred to in these cases, are all that are recollected on this subject, though there are many cases the other way, even on this point.

Cross *v.* Bryant *et al.*

But these three cases are different from the case at bar, as the creditors of Johnson & Pierce release nothing, and are required to give up nothing, but merely to receive their money so far as there is property to pay them, by this voluntary provision, and are at the same time still left to pursue their legal remedies unrestrained.

The delivery of the property in the assignment to the assignee was sufficient. All that the law requires to transfer the property is to give the vendee dominion over it. Wilus *et al. v.* Ferris, 5 Johns. 344; Shumway *v.* Rutter, 8 Pick. 44; 2 Kent's Com.

S. T. Logan and C. Walker, for the defendants in error, contended,

1st. Where a contract is in writing, parol evidence is not admissible to prove the same.

2d. There was no evidence to prove the execution of the deed offered in evidence.

3d. Said deed is void because possession did not accompany it.

4th. It is void because it provides only for such creditors as shall sign it in sixty days.

5th. Because it provides that the proceeds shall be paid to Pierce & Johnson before McCracken & Struthers have their debt discharged.

Smith, Justice, delivered the opinion of the Court:

This was an action of *trespass de bonis asportatis.* Declaration in the usual form, and plea of justification. Two grounds are assigned for error. 1. The Court erred in excluding so much of the evidence as related to the sale of the property mentioned in the declaration. 2. That it also erred in refusing to admit the deed of assignment offered in evidence by the plaintiffs. From the bill of exceptions it appears that only so much of the evidence as related to the sale of the property named in the declaration as was contained in the written assignment described by the witness, was excluded, and therefore the parol evidence of the sale of which there existed written evidence in the possession of the party, which could be produced, was properly rejected. On the second point, although it does not appear upon what ground the Circuit Court refused to admit the deed of assignment in evidence, yet it is manifestly proper to consider that it could not have been upon the technical ground of want of proof of the due execution of the instrument; for if that had been the reason, it would, we think, have been so expressed in the bill of exceptions. The ground doubtless was that of the assignment's being fraudulent *per se.*

From an examination of the deed of assignment we can see no ground upon which this opinion can be sustained. The deed conveyed the property upon trust, and declared that the assignee

should take immediate possession of it, and sell it at public or private sale, and appropriate the proceeds, — 1. To pay the costs of the assignment and expenses of the trust, incurred in its execution. 2. To pay certain creditors named the full amount of their respective claims if they should execute the deed in sixty days. 3. To pay to other creditors who should execute the deed within sixty days, their respective debts, or ratable proportions thereof, if proceeds should be insufficient to pay the whole. 4. If any thing remain, to pay it over to the assignors. It also contains a grant of full power to Cross, and covenants by Cross, the trustee, to execute the trusts contained in the deed. A schedule of the several creditors of the assignors, with the debts respectively due them, is referred to, and made a part of the deed. The deed is duly executed by the assignors, by Cross, the trustee, and by many of the creditors, of whom Cross is one. A memorandum is attached to the deed reciting that the claims of three creditors are not inserted, because the debts due by the assignors to them are secured by mortgages on real estate. This is not the case of an assignment which is to depend on unjust conditions. It is positive and absolute ; and no unjust terms are coupled with it to coerce the acceptance of it by the creditors of the assignors. They are not required to accept the property, nor is the payment of its avails to be made to them on the condition of their executing an absolute release of their respective claims against the debtors. The acceptance on their part is to be purely voluntary, and they are left free to pursue whatever remedy they may elect to compel the payment of the residue of their claims, in case the avails of the assigned property should prove inadequate to the liquidation of the whole debts.

In the case of Clark *et al. v.* White, (1.) the Supreme Court of the United States say, " The debtor may prefer one creditor, pay him fully, and exhaust his whole property, leaving nothing for others equally meritorious. Yet their case is not remedial ; and why may not debts be partially paid in unequal amounts ? If those who get partial payments are willing to give releases, it is their own matter, and should a third person interfere, debtor and creditor would well say to him, you are a stranger, and must stand aside." Such seems to be the acknowledged rule of the present day in the Courts in England, and most of the United States, and is too well settled to be now disturbed. The rule, where bankrupt laws prevail, may necessarily be different but not so with us.

The provision in the deed requiring the payment over of any surplus, should there be such, to the assignors, was not an improper condition. It was but the declaration of a resulting trust, which the law would raise had it not been inserted. Nor can the

(1.) 12 Peters 178.

exclusion of the mortgage creditors, named in the memorandum, alter the principle. Indeed they might justly be considered as already secured.

We are of opinion that the judgment should be reversed with costs, and the cause be remanded to the Circuit Court for further proceedings.

*Judgment reversed.*